[Civ. No. 62771. Second Dist., Div. Three. Dec. 16, 1982.]

JON DROZ, Plaintiff and Appellant, v.
PACIFIC NATIONAL INSURANCE COMPANY,
Defendant and Respondent.

COUNSEL

Hurley & Grassini and Roland Wrinkle for Plaintiff and Appellant.

Clausen, Harris & Campbell, Kenneth H. Clausen and Marie D. Clause for Defendant and Respondent.

C. Gordon Taylor, Carolyn E. Webb, Gibson, Dunn & Crutcher, G. Edward Fitzgerald, Steven T. Johnson and Ginger G. Bauer as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**KLEIN, P. J.**—Jon Droz (Droz) appeals from a judgment of dismissal entered after the trial court sustained Pacific National Insurance Company's (Pacific) general demurrer without leave to amend to Droz's complaint.

We disagree with Droz's numerous contentions and affirm the judgment.

### PROCEDURAL AND FACTUAL BACKGROUND

On appeal, we regard the demurrers as admitting all properly pleaded material facts (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]) and so begin by reciting the gravamen of the complaint.

In 1977, Droz sustained industrial injuries compensable under the Workers' Compensation Act and received an award from the Workers' Compensation Appeals Board (the Board) in October 1979. Pacific was the workers' compensation insurance carrier for Droz's employer but refused to pay benefits to Droz under the employer's policy. As a result, Droz suffered mental and emotional

distress, has been unable to procure necessary medical care, and lost his job because he could not work without first obtaining required surgery.[1]

Droz's complaint sets forth four causes of action for civil damages: (1) Wrongful refusal to pay insurance benefits; (2) Unfair claims practices under Insurance Code section 790.03;[2] (3) Intentional infliction of emotional distress; and (4) Negligent infliction of emotional distress.

## DISCUSSION

1. *The California workers' compensation system generally shields insurance carriers from third party civil liability in industrial injuries.*

The California workers' compensation system, set forth in the Labor Code, controls adjudication of claims by employees against employers for industrial injuries. While an employee is generally limited to compensation under the system as his or her exclusive remedy against the employer (Lab. Code, §§ 3600, 3601), Labor Code section 3852[3] permits an employee who has suffered an industrial injury to sue third parties for "all damages proximately resulting from such injury."

Labor Code section 3850 protects insurance carriers from liability as "third parties" by defining "employer" to include the employer's workers' compensation insurer. Carriers thus retain immunity in most instances from civil liability under section 3852 as the "alter ego" of the employer. (*Unruh* v. *Truck Ins. Exchange* (1972) 7 Cal.3d 616, 625 [102 Cal.Rptr. 815, 498 P.2d 1063].)

If an insurance carrier refuses to pay workers' compensation benefits, the employee has a remedy under section 5814 which states: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the

---

[1]Droz also alleges that Pacific's refusal to pay the benefits was "unfair, unreasonably wrongful, fraudulent and [in] bad faith," "unlawful and malicious," "wilful, wanton, malicious, oppressing, fraudulent with intent to vex, injure and annoy," and the like. We do not include these characteristics in the recitation of facts, because a demurrer, while admitting all properly pleaded material facts, does not embrace contentions, deductions or conclusions of fact or law. (*Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 329 [253 P.2d 659]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].)

[2]Insurance Code section 790.03 defines "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance." Third party claimants may sue insurance companies for bad faith under this section. (*Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 884 [153 Cal.Rptr. 842, 592 P.2d 329].)

[3]All subsequent references to the Labor Code shall be by section number only.

reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

The only exception to the protection afforded insurers under section 3850 derives from *Unruh* v. *Truck Ins. Co., supra,* 7 Cal.3d 616, where our Supreme Court held that an insurer's extreme and outrageous conduct took such insurer outside the normal role of an insurance carrier and subjected it to potential liability for intentional torts.

In *Unruh,* the investigator for the carrier placed the plaintiff under surveillance and then initiated contact with her and caused her to become emotionally involved with him. He took her to Disneyland and, while another investigator filmed the scene, induced her to cross a rope bridge and a barrel bridge. As she crossed, he shook the bridges violently, causing an aggravation of her injury. When defendant insurance company showed the movies of the incident at the Board hearing, the plaintiff suffered an emotional breakdown upon discovering the subterfuge. (*Id.,* at pp. 620-621.)

The court held in *Unruh* that while *negligent* performance of duties does not subject carriers to liability under section 3852, the extreme behavior alleged in plaintiff's complaint exceeded the scope of "alter ego" immunity. Mere negligence does not change the essential nature of the carrier's role within the compensation scheme, but an outrageous course of conduct such as that exhibited by the defendant in *Unruh* "goes beyond the normal role of an insurer in a compensation scheme intended to protect the worker . . . [and] frustrates the laudable objectives of the workmen's compensation law." (*Id.,* at p. 630.)

The court therefore held that the plaintiff had stated facts sufficient to constitute causes of action in assault and battery and in intentional infliction of emotional distress against defendant insurance company as a "person other than the employer" under section 3852. (*Id.,* at pp. 627-631.)

2. *Section 5814 controls the alleged fact situation herein.*

We consider section 5814 to be dispositive of the issues presented here. Because section 5814 provides monetary penalties for unreasonable refusal to pay benefits, employees must seek their remedy for such misconduct by appropriate action before the Board.[4] *Unruh* creates an exception to the Board's

---

[4]Droz urges us to follow a recent appellate case, *Meyer* v. *Byron Jackson, Inc.*■(Cal.App.), in which the court permitted a civil action for discriminatory discharge following a worker's compensation claim. Our Supreme Court, however, has directed the Reporter of Decisions not to publish this case.

exclusive jurisdiction only where the carrier's conduct is outrageous and extreme in some manner other than mere refusal to pay benefits.[5]

■ As the gravamen of Droz's complaint is that Pacific refused to pay workers' compensation benefits due him, he may not rely on *Unruh* to escape the exclusive jurisdiction of the Board over his rights under workers' compensation law.

Our conclusion is reinforced by three recent appellate court decisions filed subsequent to the parties' formal briefing in this case, which rejected similar claims.

In *Ricard* v. *Pacific Indemnity Co.* (1982) 132 Cal.App.3d 886 [183 Cal. Rptr. 502], the First District affirmed the trial court's dismissal of plaintiff's complaint which alleged that defendant's refusal to pay benefits constituted breach of good faith and intentional infliction of emotional distress.

As to the first count, breach of good faith, the court stated that: "[T]he carrier's conduct, on its face, appears to be nothing more than the rejection of what it considers to be an improper claim, accompanied by what might be characterized as negligent delay. The carrier's conduct becomes additionally improper only through Ricard's allegations as to the state of mind which accompanied it, and even on that basis it does not reach the level of reprehensibility condemned in *Unruh.*" (*Id.,* at p. 893.)

The court similarly rejected plaintiff's claim of intentional infliction of emotional distress as not meeting the essential requirement that "a defendant's conduct must be 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.'" (*Id.,* at p. 894.)

In *Fremont Indemnity Co.* v. *Superior Court* (1982) 133 Cal.App.3d 879 [184 Cal.Rptr. 184], the plaintiff's complaint consisted of three causes of action: (1) Breach of duty of fair dealing in good faith; (2) Severe infliction of emotional distress; and (3) Breach of duties under Insurance Code section 790.03. The plaintiff alleged consistent delay and arbitrary reduction in benefit payments, which caused him physical and emotional suffering.

The Second District, relying on an earlier case with almost identical material allegations, *Everfield* v. *State Comp. Ins. Fund* (1981) 115 Cal.App.3d 15, at

---

[5]Droz relies on cases outside the workers' compensation area which acknowledge intentional tort actions based on wrongful refusal to pay insurance benefits (e.g., *Little* v. *Stuyvesant Life Ins. Co.* (1977) 67 Cal.App.3d 451, 461-462 [136 Cal.Rptr. 653]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 386-394 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]). These cases are inapposite in light of section 5814.

pages 881-882 [171 Cal.Rptr. 164] held that the employee had not stated sufficient facts to remove the case from the jurisdiction and authority of the Board as follows: "[T]here are no allegations of separate acts alleged sufficient to remove defendant's insurance carrier from its capacity as an insurance carrier for the purposes of invoking the tort liability incurred by reason of conduct in a different capacity as explained and was the case in *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616 . . . ."

The Second District similarly rejected the employee's cause of action based on Insurance Code section 790.03 in *DePew* v. *Hartford Acc. & Indem. Co.* (1982) 135 Cal.App.3d 574 [185 Cal.Rptr. 472]. The employee alleged that defendant insurance company paid only a pro rata portion of the award and then refused altogether to pay on the basis of a medical report it received shortly before the award became final.

The court found that despite plaintiff's allegations that defendant's behavior was "outrageous" and "extreme," "[t]he conduct complained of here—namely, the failure to pay benefits, falls far short of the type of 'outrageous and extreme' conduct contemplated by *Unruh*." (*Id.*, at p. 577.) The court affirmed the judgment of dismissal.

3. *Allegations of emotional distress unaccompanied by physical injuries do not serve to remove this case from the jurisdiction of the Board.*

Droz contends that the exclusivity provisions of the Labor Code do not apply to his action because he is seeking damages based on emotional distress unaccompanied by physical injury. He argues that emotional distress is not compensable under the workers' compensation system and that the courts have therefore carved out an exception to exclusivity where there is no claim for physical injury in conjunction with the claim for emotional distress.

He bases this argument on *Renteria* v. *County of Orange* (1978) 82 Cal.App. 3d 833 [147 Cal.Rptr. 447], in which the court permitted an employee to file a civil action against his employer for intentional infliction of emotional distress. The complaint in *Renteria* alleged that the employer and other employees "treated plaintiff in a rude and degrading manner, placed him under surveillance, subjected him to lengthy interrogations, and discriminated against plaintiff because of his Mexican-American descent, 'with the object and intent to force or cause plaintiff to suffer humiliation, mental anguish . . . and to cause plaintiff to resign his position of employment or to be fired or dismissed therefrom.'" (*Id.*, at p. 835.)

Analyzing the issue, the court carefully distinguished between the type of injury the employee sustained and the employer's alleged conduct. "The ex-

istence of a noncompensable injury does not, by itself, abrogate the exclusive remedy provisions of the Workers' Compensation Act. . . . [However] [w]e have here not an isolated instance of a physical injury which is noncompensable, but an *entire class of civil wrongs outside the contemplation of the workers' compensation system.*" (*Id.,* at pp. 840-841; italics added.) The court thus interpreted the statute as permitting an employee to recover in a civil suit for "mental suffering caused by extreme and outrageous misconduct by an employer." (*Id.,* at p. 841.)

*Renteria* does not strengthen Droz's position. Failure to pay benefits is a class of wrongs clearly within the contemplation of the workers' compensation system as the Legislature provided a specific penalty and remedy for such conduct in section 5814. *Renteria* therefore imposes the same requirements as *Unruh* on employees who seek to avoid the exclusive remedy provisions of the Labor Code. Because Droz has failed to allege conduct which would allow him to invoke the *Unruh* exception, he also fails to meet the exception outlined in *Renteria*.[6]

We, therefore, conclude that the complaint fails to state a cause of action. Because the allegations of the complaint impose no liability under substantive law, the trial court did not abuse its discretion by sustaining the demurrer without leave to amend. (*Berkeley Police Ass'n.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 943 [143 Cal.Rptr. 255]; 3 Witkin Cal. Procedure (2d Ed. 1971) Pleading, § 847, p. 2451.)

### DISPOSITION

The judgment is affirmed.

Lui, J., and Danielson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 13, 1983. Mosk, J., and Reynoso, J., were of the opinion that the petition should be granted.

---

[6]Droz may have a compensable psychiatric injury resulting from the manner in which Pacific handled the claim. Such a determination, however, is a matter within the exclusive jurisdiction of the Board.